Sealed
Public and unofficial staff access to this instrument are prohibited by court order

United States Courts
Southern District of Texas
FILED

*February 03, 2021*

Nathan Ochsner, Clerk of Court

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>MARTIEN EERHART,<br>TITUS VAN HEUR, and<br>MARINO MARRERO<br>(a/k/a "Marino Marrero Baez")<br><br>Defendants. | CRIMINAL NO: **4:21-cr-42**<br><br>18 U.S.C. § 1349<br>18 U.S.C. § 1343 |

### INDICTMENT

The Grand Jury charges:

### GENERAL ALLEGATIONS

At all times material to this Indictment, unless otherwise stated:

1.  Defendant MARTIEN EERHART was a citizen and resident of the Netherlands.

2.  Defendant TITUS VAN HEUR was a citizen and resident of the Netherlands.

3.  Defendant MARINO MARRERO was a citizen and resident of the Dominican Republic.

4.  Defendants EERHART and VAN HEUR represented that they were affiliated with an entity named Ming Global Trading ("Ming Global").

5.  CC-1 was a resident of Spring, Texas, in the Southern District of Texas.

6.  Bank 1 was a global banking and financial-services firm based in Canada.

7.  Bank 2 was a global banking and financial-services firm based in the United States.

8.  The Society for Worldwide Interbank Financial Telecommunication ("SWIFT") was a global member-owned cooperative and the world's leading provider of secure financial-messaging services. It was a network enabling financial institutions worldwide to send and receive information about financial transactions in a secure, standardized, and reliable environment.

9.  A standby letter of credit ("SBLC") was a guarantee of payment issued by a bank on behalf of a client. SBLCs were created as a sign of good faith in business transactions and were proof of the holder's credit quality and repayment abilities.

## COUNT ONE
Conspiracy to Commit Wire Fraud
(18 U.S.C. § 1349)

10. The allegations set forth in paragraphs 1 through 9 of this Indictment are re-alleged and incorporated as if fully set forth in this paragraph.

### The Conspiracy

11. From at least in or around July 2016, and continuing through at least in or around November 2018, within the Southern District of Texas and elsewhere, the defendants,

**MARTIEN EERHART, TITUS VAN HEUR,
and MARINO MARRERO**

together with co-conspirators known and unknown to the Grand Jury, did knowingly and intentionally conspire, combine, confederate, and agree to commit offenses against the United States, that is, to knowingly devise and intend to devise a scheme and artifice to defraud and to obtain money and property by means of false and fraudulent pretenses, representations, and promises, and for the purpose of executing and attempting to execute the scheme and artifice, to transmit and cause to be transmitted in interstate and foreign commerce, by means of a wire

2

communication, certain writings, signs, signals, and sounds, in violation of Title 18, United States Code, Section 1343 (wire fraud).

### Purpose of the Conspiracy

12. The purpose of the conspiracy was for EERHART, VAN HEUR, MARRERO, and their co-conspirators to obtain money from victims by falsely representing that they could provide the victims with documentation showing that the victims had access to credit or funds on deposit at Bank 1 and Bank 2.

### Manner and Means of the Conspiracy

13. Among the manner and means by which EERHART, VAN HEUR, and MARRERO, together with co-conspirators known and unknown to the Grand Jury, would and did carry out the objectives of the conspiracy were the following.

14. EERHART, VAN HEUR, and other co-conspirators chose victims by identifying individuals and entities who were seeking non-traditional financing for large commercial transactions and investments.

15. EERHART, VAN HEUR, and other co-conspirators falsely represented to victims that the co-conspirators had access to substantial funds on deposit at Bank 1 and Bank 2. They further falsely represented that they could cause Bank 1 and Bank 2 to issue SBLCs and other bank documentation, which Bank 1 and Bank 2 could transmit directly by SWIFT message to banks designated by the victims. EERHART, VAN HEUR, and other co-conspirators fraudulently caused the victims to pay a fee, either directly or through an escrow agent, in exchange for the issuance of such documentation from Bank 1 and Bank 2.

16. In fact, EERHART, VAN HEUR, and MARRERO had no ability to cause Bank 1 and Bank 2 to issue SBLCs and other bank documentation. Instead, EERHART, VAN HEUR,

3

and other co-conspirators paid MARRERO, CC-1, and other co-conspirators to obtain false and fraudulent documentation that purported to be legitimate bank documentation from Bank 1 and Bank 2. MARRERO, CC-1, and other co-conspirators then provided the fraudulent documentation to the victims and others.

17. After the victims' designated receiving banks did not receive SWIFT messages transmitting the bank documentation as promised, EERHART, VAN HEUR, and other co-conspirators provided the victims with a number of excuses and false statements, including that Bank 1 and Bank 2 had in fact sent the bank documentation and that its transmission had been confirmed.

18. EERHART, VAN HEUR, and other co-conspirators discouraged the victims from contacting Bank 1 and Bank 2 directly.

19. EERHART, VAN HEUR, MARRERO, and other co-conspirators diverted the fraud proceeds for their personal use and benefit.

### Victim A

20. In or around 2017, EERHART and VAN HEUR falsely represented to Victim A that they could help him obtain financing for a commercial project. EERHART and VAN HEUR falsely told Victim A that in exchange for payment, Ming Global would cause Bank 2 to issue a $20 million SBLC to a bank designated by Victim A in the United Kingdom. Victim A could then seek to obtain financing from the bank in the United Kingdom based on the SBLC for a commercial development project. At the direction of EERHART and VAN HEUR, Victim A caused the payment of $260,000 to Escrow Agent A.

21. EERHART and VAN HEUR falsely told Victim A that as a preliminary step in the transaction, Bank 2 had sent a "Ready, Willing, and Able" ("RWA") letter to Victim A's bank in

the United Kingdom showing that Bank 2 was prepared to issue the SBLC. In reality, EERHART, VAN HEUR, CC-1, and another co-conspirator caused a fraudulent letter to be transmitted to Victim A's bank in the United Kingdom that appeared to be a legitimate RWA letter from Bank 2. That letter falsely stated that Ming Global had 22 million British Pounds available at Bank 2.

22. On or about September 14, 2017, Victim A e-mailed VAN HEUR, EERHART, and Escrow Agent A. In that e-mail, Victim A forwarded e-mails from Bank 2 employees confirming that the purported RWA letter appeared to be fraudulent.

23. Victim A was eventually refunded the $260,000 that he paid to Escrow Agent A.

### Victim B

24. Individual A was a resident of Tennessee, and he worked with Victim B to help it obtain financing for commodities transactions. Beginning in or around March 2018, EERHART and VAN HEUR falsely represented to Individual A and others working with Victim B that in exchange for an upfront payment, Ming Global could cause Bank 1 to issue an SBLC to a designated recipient bank in Spain. EERHART knew this was false because, among other reasons, he gave sworn testimony in a 2011 federal court hearing that he had "no connection" with Bank 1.

25. Victim B made payments totaling $310,000 to Escrow Agent A, whom EERHART and VAN HEUR designated as the escrow agent for the transaction. After Escrow Agent A released $300,000 to EERHART and VAN HEUR, they paid CC-1 and MARRERO to provide fraudulent bank documentation making it appear that Bank 1 had issued a $15 million SBLC.

26. In an electronic communication on or about May 11, 2018, MARRERO forwarded CC-1 a draft of the fraudulent SBLC from Bank 1. The document falsely showed that Bank 1 was issuing a $15 million SBLC on behalf of Victim B to a designated recipient bank in Spain. Later that same day, after CC-1 forwarded VAN HEUR and EERHART the draft fraudulent document,

5

VAN HEUR sent an electronic message to EERHART and CC-1 attaching a revised fraudulent draft with handwritten edits.

27. On or about May 25, 2018, EERHART sent an e-mail to a third party falsely representing that Bank 1 had issued the SBLC to the designated recipient bank in Spain. A representative of the third party responded that it had received an e-mail with what appeared to be a Bank 1 SBLC attached, but that it never arrived at the designated recipient bank in Spain via the SWIFT messaging system.

28. EERHART and VAN HEUR continued to falsely insist to Individual A that Bank 1 had transmitted the SBLC via SWIFT message to the Spanish bank. As part of the conspiracy, MARRERO provided additional fraudulent Bank 1 documentation to support EERHART and VAN HEUR's false claim that the SBLC was successfully transmitted.

29. On or about June 5, 2018, CC-1 wrote to MARRERO to request a fraudulent delivery confirmation. MARRERO responded, in part, to confirm the e-mail address of Escrow Agent A. On or about the same day, June 5, 2018, Escrow Agent A forwarded to Individual A an e-mail that appeared to be from a Bank 1 employee attaching a fraudulent SWIFT message confirming that the SBLC was successfully delivered to the Spanish bank.

30. After Individual A received an e-mail from a Bank 1 representative on or about June 25, 2018 confirming that the purported SBLC was fraudulent, a representative of Victim B forwarded that e-mail to Escrow Agent A. On or about June 27, 2018, VAN HEUR wrote to CC-1, copying EERHART, "waiting for your feedback on how to deal with email from [Bank 1] claiming SBLC was never issued." Despite requesting a refund, Victim B never received any of its money back.

### Victim C

31. Victim C was a resident of Maryland. His company was interested in purchasing an oil refinery in Oklahoma. In or around September 2017, Victim C was introduced to Individual B. Individual B represented to Victim C that Individual B could help him arrange financing for the refinery purchase based on the issuance of an SBLC from a major international bank.

32. At Individual B's direction, Victim C caused the transfer of $235,000 to Escrow Agent A, who was to serve as the escrow agent for the financing transaction. Individual B represented to Victim C that the financing was proceeding, first through the issuance of an SBLC from Bank 1, and then later through the issuance of an SBLC from Bank 2.

33. In reality, MARRERO, EERHART, VAN HEUR, and CC-1 conspired to provide fraudulent Bank 2 documentation for this transaction. On or about April 18, 2018, the day after Victim C authorized the release of his money from escrow, Escrow Agent A transferred $100,000 to an account controlled by EERHART and VAN HEUR. EERHART and VAN HEUR then paid MARRERO and CC-1 to obtain fake bank documentation.

34. Likewise, in an electronic communication between MARRERO and CC-1 on or about May 8, 2018, MARRERO forwarded to CC-1 a fraudulent $25 million SBLC issued in the name of Individual B's entity through a Bank 2 branch in Miami, Florida. Later that same day, CC-1 forwarded the fraudulent Bank 2 documentation in an electronic communication to EERHART and VAN HEUR. Individual B continued to represent to Victim C that the promised financing was forthcoming. Individual B never obtained the financing and Victim C's company was not able to purchase the Oklahoma refinery. Victim C requested a refund of the $235,000 from Individual B, but did not receive any of his money back.

### Victim D

35. Victim D was a resident of California. He sought to obtain a loan to finance the development of a Florida property. Individual C told Victim D that in exchange for a joint upfront payment to Escrow Agent A, a bank would issue an SBLC upon which they could obtain financing.

36. Victim D and Individual C paid $310,000 to Escrow Agent A. Escrow Agent A released $300,000 to a bank account controlled by EERHART and VAN HEUR. EERHART and VAN HEUR then paid MARRERO and CC-1 to obtain fake bank documentation. After EERHART e-mailed false explanations to Individual C for why the promised SBLC had not been successfully transmitted to the designated receiving bank, on or about November 3, 2018, Escrow Agent A sent an e-mail to Individual C attaching two fraudulent documents falsely showing that Bank 1 had issued the $20 million SBLC.

37. On or about November 9, 2018, Individual C e-mailed EERHART, in part, that Individual C would be pursuing criminal charges if his money was not refunded. EERHART, copying VAN HEUR, falsely responded, in part, that if Individual C tried to contact Bank 1, "the account will be marked internally as on a black list for future business." Victim D lost the entirety of the money that he contributed to the transaction.

### Additional Co-Conspirator Communications

38. In additional electronic communications, EERHART, VAN HEUR, and CC-1 openly discussed the fraudulent scheme, including about providing fake bank documentation to additional victims. Similarly, MARRERO exchanged hundreds of electronic communications with CC-1 in 2017 and 2018 about providing fake bank documentation to victims in order to defraud them of their money. These communications included MARRERO and CC-1 exchanging

drafts of fake bank documents, and openly discussing paying bank employees to provide the fraudulent bank documentation.

All in violation of Title 18, United States Code, Section 1349.

## COUNTS TWO THROUGH NINE
Wire Fraud
(18 U.S.C. § 1343 and 2)

39.   Paragraphs 1 through 10 and 12 through 38 of this Indictment are realleged and incorporated herein as if fully set forth in this paragraph.

40.   From in or around July 2016, and continuing through in or around November 2018, in the Southern District of Texas and elsewhere, the defendants,

**MARTIEN EERHART, TITUS VAN HEUR,
and MARINO MARRERO**

knowingly and with the intent to defraud, having devised and intending to devise a scheme and artifice to defraud, and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, transmitted and caused to be transmitted, by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures, and sounds, for the purposes of executing such scheme and artifice.

41.   On or about the dates specified as to each count below, the defendants specified in each count, in the Southern District of Texas and elsewhere, for the purpose of executing such scheme and artifice, did knowingly transmit and cause to be transmitted, by means of wire communications in interstate and foreign commerce, certain writings, signs, signals, pictures and sounds, as more particularly described below:

| Count | Defendants | "On or About" Date of Wire Communication | Description of Wire Communication |
|---|---|---|---|
| TWO | MARRERO | May 8, 2018 | Electronic message sent by MARRERO to CC-1 attaching fraudulent $25 million Bank 2 SBLC in the name of Individual B's entity |
| THREE | EERHART, VAN HEUR | May 8, 2018 | Electronic message sent by CC-1 to EERHART and VAN HEUR attaching fraudulent $25 million Bank 2 SBLC in the name of Individual B's entity |
| FOUR | MARRERO | May 11, 2018 | Electronic message sent by MARRERO to CC-1 attaching fraudulent $15 million Bank 1 SBLC in the name of Victim B's entity |
| FIVE | EERHART, VAN HEUR | May 11, 2018 | Electronic message sent by VAN HEUR to EERHART and CC-1 with handwritten edits to fraudulent $15 million Bank 1 SBLC in the name of Victim B's entity |
| SIX | MARRERO | May 11, 2018 | Electronic message sent by MARRERO to CC-1 attaching fraudulent Bank 1 letter confirming deposits held by entity of additional victim |
| SEVEN | MARRERO | June 5, 2018 | Electronic message sent by MARRERO to CC-1 confirming e-mail address of Escrow Agent A for sending fraudulent Victim B document |
| EIGHT | EERHART, VAN HEUR | June 27, 2018 | Electronic message sent by VAN HEUR to EERHART and CC-1, stating in part, "waiting for your feedback on how to deal with email from [Bank 1] claiming SBLC was never issued." |
| NINE | EERHART, VAN HEUR | June 28, 2018 | Electronic voice message sent by EERHART to VAN HEUR and CC-1 about potential fraudulent transaction |

All in violation of Title 18, United States Code, Sections 1343 and 2.

## NOTICE OF FORFEITURE
(18 U.S.C. § 981(a)(1)(C))

42. Pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), the United States gives notice to defendants,

**MARTIEN EERHART, TITUS VAN HEUR,
and MARINO MARRERO**

that in the event of conviction of any of the conspiracy and wire-fraud offenses charged in Counts One through Nine of this Indictment, all property, real or personal, which constitutes or is derived from proceeds traceable to such offenses is subject to forfeiture.

43. The United States may seek the imposition of a money judgment against each defendant. In the event that a condition listed in Title 21, United States Code, Section 853(p) exists, the United States will seek to forfeit any other property of the defendants in substitution up to the total value of the property subject to forfeiture.

A TRUE BILL,

Original Signature on file
_____
FOREPERSON OF THE GRAND JURY

DANIEL S. KAHN
ACTING CHIEF
Criminal Division, Fraud Section
United States Department of Justice

By: _____
BLAKE C. GOEBEL
Trial Attorney
(202) 616-5010

JUSTIN WEITZ
Acting Principal Assistant Chief
(202) 598-8084

11